**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Edward Pingel,         ) | No. CV-09-2021-PHX-GMS |
| )                            Petitioner,      ) | **ORDER** |
| vs.                          ) | |
| )                            State of Arizona, et al., ) | |
| )                            Defendants.    ) | |
| _____) | |

Pending before this Court is an Amended Petition for Writ of Habeas Corpus filed by Petitioner James Pingel. (Doc. 6). Magistrate Judge Jay Irwin has issued a Report and Recommendation ("R & R") in which he recommended that the Court deny the petition with prejudice; Petitioner has objected to the R & R. (Docs. 36 and 37). Because objections have been filed, the Court will review the petition de novo. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). For the following reasons, the Court accepts the R & R in part and denies it in part, and denies the petition with prejudice.

**BACKGROUND**

On October 4, 1988, a Grand Jury indicted Petitioner on one count of Molestation of a Child in violation of Arizona Revised Statutes ("A.R.S.") § 13-1410 and one count of Sexual Contact with a Minor in violation of A.R.S. § 13-1405. (Doc. 17-1, Ex. B). According to the indictment, Petitioner had molested his four-year-old stepdaughter, N.J.L., on September 26, 1988. (Doc. 17-1, Ex. B, Doc. 17-1, Ex. F, Doc. 17-3, Ex. X at 9:20-22). On

1    December 5, 1988, he pleaded guilty to one count of Attempted Sexual Contact with a Minor
2    and the other charge was dismissed. (Doc. 17-1, Ex. C). On February 3, 1989, he was
3    sentenced to three months in jail and lifetime probation. (Doc. 17-1, Ex. D). He was
4    registered as a sex offender pursuant to A.R.S. § 13-3821(c). (*Id.*). On August 26, 1997, the
5    terms of Petitioner's probation were modified so that he could accept employment that had
6    been offered to him in the state of Wisconsin, where he then moved with his wife and their
7    two children, along with his wife's two other daughters, A.M.L and N.J.L. (Doc. 17-1, Ex.
8    E).

9          On March 18, 2001, N.J.L. told her mother that Petitioner had entered her bedroom
10   and molested her on a continuing basis after the family moved to Wisconsin. The Marathon
11   County Sheriff's Department investigated the allegations, which led them to allegations that
12   Petitioner had also been molesting his other stepdaughter, A.M.L. (Doc. 17-1, Ex. F). On
13   March 28, a four-count criminal complaint was filed against Petitioner, and on May 3 an
14   Information was filed containing the same counts. (Doc. 17-1, Ex. G). The State of Arizona
15   placed a detainer on petitioner on April 9, 2001. (Doc. 17-1, Ex. H, at 11). Petitioner was
16   convicted after a jury trial and began serving his sentence in Wisconsin.

17         On December 4, 2003, Petitioner appeared in Maricopa County Superior Court at a
18   disposition hearing regarding his probation violation. He acknowledged that he had been
19   convicted of the Wisconsin charges, and admitted to violating the terms of his parole. (Doc.
20   17-1, Ex. H at 7:7–24). He was given a ten-year sentence, with a five-year enhancement
21   based upon the fact that the victim was the same as the victim in his Arizona conviction, and
22   given credit for his Wisconsin incarceration from April 9, 2001, the day on which Arizona
23   placed a detainer on him.[1] Petitioner was given a total sentence, therefore, of fifteen years,

---

[1] At the sentencing hearing, the probation officer testified that she had originally calculated the sentence date from April 9, 2001, but had been informed by her supervisor that "the statute states that he can't have credit for that time because he was convicted of a new crime." (Doc. 17-1, Ex. H at 13:13-17). When the prosecutor was asked if he knew of any reason that Petitioner should not be given credit beginning on April 9, 2001, he replied, "No, Your Honor, I sure don't." (Doc. 17-1, Ex. H at 15:14). The judge rejected the

with 1,061 days credit for the combined time he had served in Arizona and Wisconsin. (Doc. 17-1, Ex. H at 17:20–24). The sentence was to be served consecutively to his Wisconsin incarceration. (*Id.*).

On January 5, 2004, Petitioner filed a Notice of Post-Conviction Relief ("PCR") in Maricopa County Superior Court, noting that both the District Attorney and the Probation Department had recommended he be sentenced to only ten years, to run concurrently with his Wisconsin conviction. (Doc. 17-1, Ex. I). Petitioner was provided counsel, who filed a petition on August 10, 2004 that *Blakely v. Washington*, 542 U.S. 296 (2004), which had been decided since Petitioner's sentencing, prohibited the judge from enhancing the sentence based on an aggravating factor—namely, that the victim was the same as in the original case—that had been found by the judge rather than a jury. (Doc. 17-2, Ex. K). On March 11, 2005, with Petitioner's PCR challenging the sentencing enhancement still pending, his Wisconsin conviction was vacated and a new trial was ordered.[2] (Doc. 17-3, Ex. P). Petitioner supplemented his PCR to argue for vacating his Arizona sentence based upon the fact that the Wisconsin conviction had been the only ground upon which he had been found to violate parole. (*Id.*). On July 26, 2005, the Arizona Department of Corrections wrote the Marathon County Sheriff's Department, noting that Petitioner had been sentenced for his parole violation and that Arizona had begun his sentence on April 13, 2002. (Doc. 23-1, Ex. A). On October 3, 2005, the superior court ruled that the colloquy at his disposition hearing constituted an admission of wrongdoing sufficient to demonstrate that he had violated the terms of his parole, even absent a conviction. (Doc. 17-3). It further found, however, that *Blakely* did not permit the five-year enhancement, and scheduled a new sentencing hearing.

---

recommendation of the probation officer's supervisor and gave Petitioner credit for his entire Wisconsin incarceration. In fact, the probation officer's supervisor had been correct. When a person is incarcerated based on a conviction for a crime in another state, that time is not "spent pursuant to his Arizona offense . . . and there is no reason to credit him with the time." *State v. Horrsiberger*, 133 Ariz. 569, 570, 653 P.2d 26, 27 (App. 1982).

[2] It is not clear from the record on what grounds the original conviction was vacated.

- 3 -

1       Before being re-sentenced in Arizona, Petitioner pled guilty to two of the four counts
2 in the Wisconsin proceeding; the other two were dropped. (Doc. 17-3, Ex. V). On November
3 16, he was sentenced to one thirty-year sentence and one twenty-year sentence, to run
4 concurrently, and was given credit for 1700 days in prison, dating back to his original arrest
5 in March of 2001. (*Id.*).

6       Petitioner was re-sentenced in Arizona on June 8, 2006. (Doc. 17-3, Ex. X). At his
7 hearing, his counsel argued that he should receive credit for incarceration dating back to
8 April of 2001, based on the reasoning the judge had used in the December 4, 2003 hearing.
9 Alternatively, his counsel argued that he should be granted credit for any time served prior
10 to November 15th, 2005, because his original conviction had been vacated and he was only
11 being incarcerated based on the probation violation until his conviction at the new trial. (Doc.
12 17-3, Ex. X at 16–17). The State noted that Wisconsin had given him full credit for his 1700
13 days incarceration when he was sentenced after his new trial, and that under Arizona law, a
14 consecutive sentence was mandatory. (*Id.* at 17:22–18:9). The court issued a ten-year
15 sentence, consecutive to his Wisconsin sentence, with 92 days credit based upon his previous
16 incarceration in Arizona and no credit for the time he served in Wisconsin. (*Id.* at 21:11–19).

17       On July 10, 2006, Petitioner filed a PCR in regards to the new sentence; his assigned
18 attorney moved to withdraw so that Petitioner could bring an ineffective assistance of counsel
19 claim without conflict. (Doc. 17-4, Ex. CC). Petitioner's new counsel notified the Court that
20 he was "unable to find any facially colorable claims," and requested the Court grant
21 Petitioner additional time to file a pro se petition. (Doc. 17-4, Ex. EE). Petitioner filed his pro
22 se PCR on February 20, 2007. (Doc. 17-4, Ex. FF). Relief was denied on August 13, 2007.
23 (Doc. 17-4, Ex. II). On November 6, Petitioner mailed a document to the Court of Appeals,
24 but attached a cover letter to the Clerk of Court stating that he intended the document as a
25 Petition for Rehearing and Review of the Superior Court decision, not a Petition for Review
26 to the Court of Appeals. (Doc. 17-4, Ex. JJ). If this document was ever filed as a Petition for
27 Rehearing, or any action was ever taken on it, there is no evidence of it in the record.
28 Petitioner filed a Petition for Review to the Court of Appeals on December 27, 2007, and the

Court of Appeals denied review on November 12, 2008. (Doc. 17-4, Ex. NN).

Petitioner filed his initial habeas corpus petition on October 5, 2009. (Doc. 1). The petition was dismissed for lack of jurisdiction, and Petitioner filed an Amended Petition on January 5, 2010. (Doc. 6). Petitioner asserts six grounds for relief, namely: (1) by not crediting him at his June 8, 2006 sentencing with the 1,061 days it had credited him with at his December 4, 2003 sentencing, the court violated Petitioner's Due Process and Double Jeopardy rights, (2) the June 8, 2006 sentence constituted a second consecutive sentence on top of the sentence he had received and been serving since December 4, 2003; since it was in effect a second sentence for the same conviction, it violated him of his rights under the Double Jeopardy clause, (3) by not allowing Petitioner to serve the sentence under the terms imposed on December 4, 2003,[3] the court denied Petitioner his Due Process and Equal Protection rights, (4) Petitioner's Due Process rights were violated because the court applied the wrong section of A.R.S. § 13-709 at his re-sentencing, (5) Petitioner's Due Process rights were violated because the court misapplied A.R.S. § 13-709 at his re-sentencing,[4] (6) Petitioner's Due Process rights were violated because he was detained in Wisconsin from the time his sentence was overturned until the time he was re-convicted under the Arizona sentence (and therefore could not post bail prior to trial as he would have been otherwise been able to do) but was never given credit for incarceration on his Arizona sentence during this period.

On October 17, 2011, Magistrate Judge Irwin issued his R & R, finding that Petitioner's claims had not been fairly presented as federal claims during his state court proceedings, and that he had therefore not exhausted his state court remedies, and now had procedurally defaulted on the claims. (Doc. 36). Petitioner filed objections on November 3,

---

[3] Petitioner claims that since the December 4, 2003 sentence was to run "consecutively to any sentence you are currently serving," it began to run as soon as his first Wisconsin sentence was vacated, since that was the sentence he was currently serving when sentenced. (Doc. 6 at 8).

[4] The section has been renumbered as A.R.S. § 13-712.

- 5 -

2011 objecting to the following: (1) that the R & R refers to a letter sent by the Arizona Department of Corrections on July 25, 2006, when in fact it was sent on July 25, 2005,[5] (2) that the Magistrate Judge was not, according to Petitioner, aware that "the Wisconsin Conviction and Sentence were VACATED AND THEREFORE EXPIRED in JAN. of 2005" (emphasis in original), and (3) that the July 26, 2005 letter had not been made available to him prior to September of 2010, which he claims renders it newly discovered evidence for the purposes of Ariz. R. Crim. P. 32.1. (Doc. 37).[6]

## DISCUSSION

**I. Legal Standard**

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3) (2006). The writ may be granted by "the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Review of Petitions for Habeas Corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244 *et seq.* (2006).

**A. Statute of Limitations under AEDPA**

Under AEDPA, petitions for habeas corpus are governed by a one-year statute of limitations. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005) (AEDPA "establishes a 1-year statute of limitations for filing a federal habeas corpus petition") (citing 28 U.S.C. § 2244(d)(1)). The limitation period begins to run when the state conviction becomes final—either "upon 'the conclusion of direct review or the expiration of the time for seeking

---

[5] The letter in the record is dated July 26, 2005. (Doc. 23-1, Ex. A). Elsewhere, Magistrate Judge Irwin references the letter by its correct date. (*See* Doc. 36 at 4).

[6] On December 15, 2011, Petitioner filed a supplemental briefing noting that the state had not responded to his objections within 14 days, and claiming that this action should be viewed as a waiver of any defense to the objections. (Doc. 38). The federal rules provide that "[a] party *may respond* to another party's objections within 14 days," but do not require a response; choosing not to respond does constitute a waiver. FED. R. CIV. P. 72(b)(2) (emphasis added).

- 6 -

1  such review.'" *White v. Klitzkie*, 281 F.3d 920, 923 (9th Cir. 2002) (quoting 28 U.S.C. §
2  2244(d)(1)(A)).

### B. Exhaustion of State Procedures

Habeas relief is not available to petitioners who do not properly exhaust their state court procedural remedies prior to filing their federal petitions. 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, a petitioner must give state courts the opportunity to pass upon and correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (holding that "a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims") (citations omitted); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("A habeas petitioner must give the state courts the first opportunity to review any claim of federal constitutional error before seeking federal habeas review of that claim.") (citing *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982)). Except in cases "carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for the purposes of federal habeas once the Arizona State Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 n.3 (9th Cir. 2005) (quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).[7]

### 1. Fair Presentation

To provide the state with the necessary opportunity to review the claim, a petitioner must fairly present the claim in each appropriate state court. A claim is not fairly presented unless a petitioner "explicitly indicated" that "the claim was a *federal* one" in the state court litigation. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904

---

[7] Failure to exhaust state court remedies does not prevent a court from denying a petition on the merits should it deem such denial proper. 28 U.S.C. § 2254(b)(2); *see Duncan v. Walker*, 533 U.S. 167, 183 (2001) (Souter, J., concurring) (stating that the "AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims").

(9th Cir. 2001) (emphasis in original). A petitioner explicitly indicates that a claim is federal by including "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). A petitioner does not fairly present a state court with a federal claim merely by including "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial." *Hiivala*, 195 F.3d at 1106 (citing *Gray*, 518 U.S. at 162–63).

### 2. Excuse from Exhaustion Requirement

In certain limited circumstances, habeas petitions may be considered by the federal court, even if the petitioner did not exhaust the claims by fairly presenting them in state court. Excuse from exhaustion is available when either "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The Ninth Circuit has held that 28 U.S.C. § 2254(b)(1)(B)(ii) may be satisfied when "the highest state court has recently addressed the issue raised in the petition and resolved it adversely to the petitioner." *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981). It may also be satisfied when "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981).

### C. Procedural Default

Habeas review is not available to petitioners whose claims are procedurally defaulted. A claim may be procedurally defaulted in one of two ways. First, a claim is procedurally defaulted when it was raised in state court, but the state court denied relief based upon "an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Second, claims that were not exhausted in state court are procedurally defaulted if the district court determines that a return to state court would be futile because procedural rules would eliminate "the likelihood that a state court will accord the habeas petitioner a hearing on the merits of the claim." *Harris v. Reed*, 489 U.S. 255, 268–70 (1989) (O'Connor, J., concurring). A federal court may only hear a claim that has been procedurally defaulted

if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### 1. Cause and Prejudice

Cause for procedural default exists when "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). When a state court petition is denied because of a procedural rule that was violated because a petitioner's attorney was merely negligent—for example, when an attorney "misses a filing deadline" through "oversight"—the petitioner has not shown cause for the procedural default, since the attorney remains the agent of the petitioner. *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012). However, when an attorney "abandons his client without notice, and thereby occasions the default" the agency relationship is severed, and a petitioner may show cause for procedural default. *Id.*

Even if a petitioner can show cause for the procedural default, federal habeas review is not proper unless the petitioner can also demonstrate prejudice. A petitioner suffers no actual prejudice when "[t]he other evidence of guilt presented at trial . . . was substantial to a degree that would negate" the alleged prejudice caused by the allegedly constitutional action. *Wainwright v. Sykes*, 433 U.S. 72, 91 (1977).

### 2. Miscarriage of Justice

Absent cause and prejudice for a procedural default, a petitioner must show that failing to consider a habeas petition would result in a fundamental miscarriage of justice. To meet this standard, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). A miscarriage of justice claim is not a constitutional claim for relief, but merely "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

**D. Merits Review**

A court reviewing a petition on the merits can grant relief only if the state court decision was "contrary to, or involved an unreasonable application of"clearly established law. *Williams v. Taylor*, 529 U.S. at 391. Clearly established federal law consists of "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 698 (2002)). Habeas is not granted merely when a federal court disagrees with a state court's constitutional interpretation: "the most important point is that an *unreasonable* application of federal law is different than an *incorrect* application of federal law."*Williams*, 529 U.S. at 410.

**II Analysis**

Magistrate Judge Irwin found that Petitioner failed to present his claims as federal claims in his state court proceedings, and Petitioner does not address the issue of exhaustion in his objections. Instead, he raises a number of claims involving the letter that was produced on September 15, 2010, including an argument that the letter constitutes newly discovered evidence. (Doc. 37 at 1). Even though Petitioner did not object to Magistrate Judge Irwin's exhaustion determination, this Court will review the determination de novo before addressing the question of the letter. *Reyna-Tapia*, 328 F.3d at 1121.

**A. Timeliness, Exhaustion, and Procedural Default.**

There is no question that the petition is timely under AEDPA, as Respondents concede. In his state court filings, however, Petitioner did not fairly present the federal nature of his claims. The PCR he filed after resentencing refers almost exclusively to state law, and contains only the following phrases that could arguably be considered federal claims:

> Equal protection. in Regard's to a Defendants ability to pay bail and move forward with per existing sentences?
>
> Does a Defendant have equal protection under the law if, the unability of the defendant to make or pay bail. stop's denie's or delays the defendants right to serve the sentences imposed upon him in a timely manner. While he is in custody. Like any other similarly sentenced defendent would whom is able to post a bond would have.

- 10 -

> Telling a defendant at resentencing that you are not going to accredit previously accredited time. and that they will have to do that credited time again is double Jeopardy in its purest form and should not be allowed to happen.

(Doc. 17-4, Ex. FF at 1, 6, 6 [*sic*]).

As Magistrate Judge Irwin noted, "Petitioner's references to 'equal protection' and 'double jeopardy' offered no clue whether he was raising a claim under Arizona's equal guarantees, or the U.S. Constitution's guarantees." (Doc. 36 at 10). Petitioner did not fairly present claims arising under the Equal Protection clause of the Fourteenth Amendment by "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial." *Hiivala*, 195 F.3d at 1106.

Petitioner's reference to Double Jeopardy does not signal that he was presenting a federal Double Jeopardy claim rather than a state one. Arizona's Double Jeopardy provisions are more generous to defendants than those of the federal constitution. In *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982), the Supreme Court held that mistrials granted on Defendant's motion are subject to the Double Jeopardy Clause "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial." As the Ninth Circuit recently noted, "the *Kennedy* standard is rarely met." *U.S. v. Lopez-Avila*, ___ F.3d ___, 2012 WL 450314, at *7 (9th Cir. Feb. 14, 2012). The Arizona Supreme Court has overtly adopted a stricter standard when interpreting the Arizona State Constitution's Double Jeopardy Clause, holding that prosecutorial misconduct short of goading a mistrial may result in Double Jeopardy when it "amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal." *Pool v. Superior Ct. In and for Pima Cty.*, 139 Ariz. 98, 108–109, 677 P.2d 261, 271–72 (1984). Petitioner referenced Double Jeopardy in a PCR that otherwise mentioned state law almost exclusively; a state court would presumably believe that he was referencing the Double Jeopardy clause in the Arizona state constitution. "[R]aising a state claim that is merely similar to a federal claim does not exhaust state remedies." *Fields v. Waddington*, 401 F.3d 1018, 1022 (9th Cir.

2005).

As noted by Magistrate Judge Irwin, Petitioner may have cited federal law in his reply brief to the PCR, if he filed one (there is no reply brief in the record). Furthermore, he cited federal law in the "Petition for Rehearing or Review," which may never have been filed and was never ruled on, and in his Petition for Review with the Court of Appeals. (Doc. 17-4, Exs. JJ, KK). Since he did not fairly present his claims as federal claims to the trial court in his PCR, it does not matter that he raised them in later filings, because in order for a petitioner to exhaust a claim he "must properly raise it on every level of direct review." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004). Moreover, had he included federal claims in a reply brief to his PCR, the court would not have been able to rule on it, because the Arizona Rules of Criminal Procedure require that every ground for relief be included in "the petition itself." *State v. Lopez*, 223 Ariz. 238, 239, 221 P.3d 1052, 1053 (App. 2009). *See also Alaska Ctr. for Env't v. United States Forest Serv.,* 189 F.3d 851, 858 n. 4 (9th Cir. 1999) (Petitioner waives argument by failing to raise it in the opening brief and cannot raise argument for the first time in the reply brief).

Magistrate Judge Irwin noted that Petitioner is both precluded and time-barred from returning to state court. (Doc. 36 at 15–16). Petitioner does not object to this conclusion, except as it pertains to his objections regarding the July 25, 2005 letter, which would provide an exception to default were it to be found to be "new evidence." (Doc. 37). This objection will be discussed below.

**B. Petitioner's Objections - The July 26, 2005 letter and New Evidence**

Petitioner raises three objections to the R & R, all relating to the July 26, 2005 letter. (Doc. 37).

**1. Date of the Letter**

First, Petitioner notes that Magistrate Judge Irwin refers to the letter as a "July 25, 2006" letter, and thereby suggests that it was written after Petitioner's June 8 resentencing. Petitioner claims that Magistrate Judge Irwin's analysis—that the letter from the ADOC cannot revise the judge's June 8 sentence—misconstrues Petitioner's argument. Instead,

Petitioner claims that the letter demonstrates that he was serving his Arizona sentence in Wisconsin while he was awaiting his new trial after the first sentence was vacated. Since he was serving his Arizona sentence, he could not post a bond to be free on bail in Wisconsin while awaiting his second trial. Petitioner claims that when the Arizona court denied him Arizona credit for the time served, it violated his rights under the Due Process and Double Jeopardy clauses.

Petitioner is correct that Magistrate Judge Irwin's description of the letter relies on an apparent mistake regarding its date, although elsewhere in the R & R the letter is properly identified as dated July 26, 2005. (Doc. 36 at 4). The section to which Petitioner objects is the discussion of whether the letter qualifies as "newly discovered evidence" under Ariz. R. Crim. P. 32.1, and thereby excuses procedural default in state court. Magistrate Judge Irwin's discussion of the letter as though it post-dated the June 8, 2006 sentencing will not be referenced when that substantive issue is discussed below.

**2. Vacated Sentence**

Next, Petitioner argues that Magistrate Judge Irwin did not know that Petitioner's first Wisconsin sentence was vacated in January of 2005.[8] (Doc. 37 at 4). Petitioner argues that because his first Wisconsin conviction was vacated, he was serving only his Arizona sentence between March 11, 2005 and November 16, 2005, giving him "legitimate expectations" regarding the length of his incarceration. *U.S. v. DiFrancesco*, 449 U.S. 117, 137 (1980). Had Magistrate Judge Irwin not known that Petitioner's first Wisconsin sentence was vacated, it may have in fact been relevant to the analysis. The R & R states, however, that "[i]n the midst of Petitioner's first PCR proceeding, his conviction in the Wisconsin prosecution was vacated, and a new trial ordered." (Doc. 36 at 3). It is clear that Magistrate Judge Irwin was aware of the fact that Petitioner's sentence was vacated. Petitioner's claim that the R & R does not acknowledge that his original Wisconsin sentence was vacated is

---

[8] According to the record, Petitioner's Wisconsin conviction was in fact vacated on March 11, 2005. (Doc. 17-3, Ex. P)

- 13 -

1  without merit.

## 3. Newly Discovered Evidence

Petitioner claims that the fact that the letter from the ADOC was not produced until September of 2010 qualifies it as "newly discovered evidence" under Ariz. R. Crim. P. 32.1, and thereby excuses his procedural default in state court. The letter, sent from the Arizona Department of Corrections to the Marathon County Sheriff's Department on July 26, 2005 is a codification of the sentence imposed for Petitioner's parole violation in December of 2003, sent after Petitioner's Wisconsin sentence had been vacated. (Doc. 23-1, Ex. A). Magistrate Judge Irwin states that the letter does not provide cause to excuse Petitioner's procedural default. (Doc. 36 at 18). In his analysis as to whether the letter provides Petitioner the right to return to state court and pursue an otherwise untimely petition under Ariz. R. Crim. P. 32.1, however, Magistrate Judge Irwin describes the impact the letter would have had if it had been issued after Petitioner's June 8, 2006 sentence. (Doc. 36 at 16).

As it stands, the letter is the only evidence in the record that the State of Arizona actively asserted custody of Petitioner under his Arizona sentence while he was incarcerated in Wisconsin after his first sentence was vacated and before his second trial. According to Petitioner, the letter demonstrates that he was serving an Arizona sentence during period he was incarcerated in Wisconsin after his first sentence was vacated and before his second was imposed. He claims that he was prevented from posting bond prior to his second trial only because of the Arizona Department of Corrections. It is possible that the Arizona state courts may consider the letter to be "newly discovered" evidence sufficient to excuse an untimely filing under Rule 32.1(d). Petitioner claims that he "asked every appealate [*sic*] attorney and checked every file for this letter from the ADOC and none of us could find it," and that he "wrote to the ADOC Records department myself, but I never received an answer from them." (Doc. 37 at 6). Therefore, although Petitioner's claims are not exhausted, this Court cannot determine whether claims that depend on the July 26, 2005 letter are truly procedurally defaulted, because if the state courts were to grant him the opportunity to bring the claim under Rule 32.1, he could exhaust it at some point in the future.

Claim One and Claim Two relate to Petitioner's June 8, 2006 sentencing, which took place after the second Wisconsin conviction. Even if the letter were to qualify as newly discovered evidence, it would have no bearing on these claims, which are procedurally defaulted. Claim Four and Claim Five are state law claims; the fact that Petitioner states that the violations of state law constituted a violation of due process does not convert them into federal claims. Only Claim Three and Claim Six, which involve the incarceration during the time he would otherwise have been free in Wisconsin, rely upon the letter, and therefore only these two claims may not be procedurally defaulted.

Rather than stay these claims while Petitioner returns to state court to exhaust them, however, the Court will deny them on their merits. *See Duncan v. Walker*, 533 U.S. at 183 ("AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims."). Petitioner claims that from March 11, 2005, until November 16, 2005, he was incarcerated solely at the behest of ADOC; had Arizona not held a detainer on him, he could have posted a bond and been free from incarceration prior to his sentencing on November 16. Petitioner is correct. He further states that because he had been told at his first Arizona sentencing that he was receiving Arizona credit based on his Wisconsin incarceration, he had a "legitimate expectation" that any new sentence imposed after his appeal would start on the same date. (Doc. 37 at 10). Here he is not correct, because a defendant's "legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked." *DiFrancesco*, 449 U.S. at 137. As the Supreme Court has noted, after a defendant successfully appeals a sentence, there is "no absolute constitutional bar to the imposition of a more severe sentence on reconviction." *DiFrancesco*, 449 U.S. at 135 (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)). Petitioner's Arizona sentence for the parole violation was adjusted only after he filed a PCR claiming the original sentence based on the parole violation was unconstitutional. Although he did not get credit for the 1,061 days his original sentence had given him credit for, his sentence was reduced by five years, resulting on balance in an earlier release date than he would have received without the appeal.

- 15 -

1  Denying Petitioner credit for the extra days was not an oversight—the trial court considered
2  the question, heard arguments from both parties, determined that the original decision had
3  been incorrect under state law, and corrected the error on resentencing. (Doc. 17-3, Ex. H at
4  21). "The Constitution does not require that sentencing should be a game in which a wrong
5  move by the judge means immunity for the prisoner." *DiFrancesco*, 449 U.S. at 135 (1980)
6  (quoting *Bozza v. U.S.*, 330 U.S. 160, 166–67 (1947). Whether the court was correct as a
7  matter of state law is not cognizable in habeas review; in any event the decision did not result
8  in a constitutional error.

9  Nor does Petitioner articulate a constitutional violation regarding the seven months
10 he spent incarcerated between the time his sentence was vacated and the time he was
11 resentenced in Wisconsin. Had the state of Arizona credited him with this time, the state of
12 Wisconsin would have been within its rights not to credit him. As a result, his eventual
13 release date would have been the same. Had the state of Arizona sought no interest in him
14 during this time, and he had posted bond before his second sentencing, Wisconsin certainly
15 would not have given him credit for his incarceration, and his eventual release date would
16 have been seven months later. In any event, on the date of his actual resentencing, June 8,
17 2006, the Arizona court was aware that he had been incarcerated in Wisconsin, that the
18 Wisconsin court had granted him credit for his time, and that Arizona law required that his
19 sentence for the probation violation be consecutive to his Wisconsin sentence. (Doc. 17-3,
20 Ex X at 14–21). As noted above, Petitioner could have been given a sentence longer than his
21 original sentence; the fact that his sentence was not reduced as much as he had expected it
22 to be does not violate the constitution. The state court did not issue a decision that was
23 "contrary to, or involved an unreasonable application of" clearly established law. *Williams*
24 *v. Taylor*, 529 U.S. at 391.

### C. Certificate of Appealability

26 A Certificate of Appealability ("COA") will issue when counts are dismissed on
27 procedural grounds so long as "reasonable jurists could debate" whether the decision is
28 correct. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a decision issues on the merits,

a COA will issue when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* There is no debate that Claims One, Two, Four, and Five were not exhausted and have been procedurally defaulted. Jurists would not find it "debatable or wrong" that Claims Three and Six should be dismissed on the merits. No COA will issue.

**IT IS THEREFORE ORDERED**

1. Magistrate Judge Irwin's Report and Recommendation (Doc. 36) is **accepted in part and denied in part**.

2. Count One, Count Two, Count Four, and Count Five are **dismissed with prejudice** because they have not been exhausted, and Petitioner is procedurally defaulted from bringing them in state court.

3. Count Three and Count Six are **dismissed with prejudice** on the merits.

4. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, no COA will be issued.

DATED this 19th day of March, 2012.

G. Murray Snow
United States District Judge